**COURT OF CRIMINAL APPEALS OF TEXAS**
**APPLICATION FOR A WRIT OF HABEAS CORPUS**
**SEEKING RELIEF FROM FINAL FELONY CONVICTION**
**UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07**

This document contains some pages that are of poor quality at the time of imaging.

## INSTRUCTIONS

1. You must use the complete form, which begins on the following page, to file an application for a writ of habeas corpus seeking relief from a final felony conviction under Article 11.07 of the Code of Criminal Procedure. (This form is not for death-penalty cases, probated sentences which have not been revoked, or misdemeanors.)

2. The district clerk of the county in which you were convicted will make this form available to you, on request, without charge.

3. You must file the entire writ application form, including those sections that do not apply to you. If any pages are missing from the form, or if the questions have been renumbered or omitted, your entire application may be dismissed as non-compliant.

4. You must make a separate application on a separate form for each judgment of conviction you seek relief from. Even if the judgments were entered in the same court on the same day, you must make a separate application for each one.

5. Answer every item that applies to you on the form. Do not attach any additional pages for any item.

6. You must include all grounds for relief on the application form as provided by the instructions under item 17. You must also briefly summarize the facts of your claim on the application form as provided by the instructions under item 17. Each ground shall begin on a new page, and the recitation of the facts supporting the ground shall be no longer than the two pages provided for the claim in the form.

7. Legal citations and arguments may be made in a separate memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not.

8. You must verify the application by signing either the Oath Before Notary Public or the Inmate's Declaration, which are at the end of this form on pages 11 and 12. You may be prosecuted and convicted for aggravated perjury if you make any false statement of a material fact in this application.

9. When the application is fully completed, mail the original to the district clerk of the county of conviction. Keep a copy of the application for your records.

10. You must notify the district clerk of the county of conviction of any change in address after you have filed your application.

*I will bring them to you*
*I will not copy them it is a Felney*
*OK Debra Kegley*

Rev. 01/14/14

# 4 CLAIM "D"

## MEMORANDUM OF LAW

Now comes petitioner, thus and would show the court how the violations done on to petitioner violated his rights under the Due process clause of equal protection. That the evidence presented was legally and factually insufficient to support petitioner's conviction, an misdirected judgment, therefore the DeWitt Judicial District of 24TH did not prove its accusation beyond a reasonable doubt, then along petitioner's Sixth Amendment of the United States Constitution has been violated. That with the District Attorney, Judge, and Lawyer comitted a fundlent practice of spoilation with the records. By the actions in 2001 suicide to allegations in 2012 Murder. Witness the following.

SUICIDE: the voluntary and intentional killing of one's self; suicide was a felony at common law, but modern statutory law is not unanimous in classyifying it as a crime. There is no unanimity on the question of whether attempted suicide or aiding and abetting suicide is illegal, although the criminalization of aiding and abetting suicide is strongly favored by critical commentators.

SIXTH AMENDMENTS: Through the process of selective incorporation, each of these rights has been applied to the states under the due process clause of the Fourteenth Amendment. While these rights from the foundation of the accused's right to a fair trial, the accused has been accorded additional rights, such as the right to conduct his or her own defense as necessary to a fair trial,

the accused has been accorded additional rights, such as the right to conduct his or her own defense as necessary to a fair trial under the due process clause.

MURDER; a common law offense of unlawful homicide; unlawful killings of another human being with malice aforethought. This requires a premeditated intent to kill plus an element of hatred. The development of the law of the crime led to several other categories of murder such as intentional killings in the heat of an unreasonable passion; felony-murder, where the defendant unintentionally kills another person in the commission of a felony; and where the defendant kills another while intending to do him only serious bodily harm. Today, legislatures have distinguished between the different degrees of homicide in order to limit the possible infliction of the death penalty to the most egregious form "first degree" murder. The modern classification of murder includes first degree murder and second degree murder.

⟨FIRST DEGREE MURDER⟩ has been often defined as an unlawful killing that is willful, deliberate, and premeditated, willfulness being the requirement of intent, deliberation requiring a conscious consideration of the decision to kill, and premeditation requiring that intent to kill be fashioned prior to the killing. Each one of the requisite elements can be formed within at time of a moment's duration. First degree murder also includes the category of felony-murder. It may also include the situation where the actor purposely or knowingly causes serious bodily injury resulting in death.

SUMMARY: Therefore petitioner would like the 24th Federal District, DeWitt County set a hearing to this claim as the following cite is cited.

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT
338 F. 3d 382; 2003 U.S. App. LEXIS 15778

CRIMENAL LAW + PROCEDURE > HABEAS CORPUS > EXHAUSTION OF REMEDIES > GENERAL OVERVIEW

CRIMENAL LAW + PROCEDURE > HABEAS CORPUS > EXHAUSTION OF REMEDIES > PREREQUISTIES GOVERNMENT > COURT > JUDICAL COMITY

28 U.S.C.S. + 2254 [b] [i] requires that federal habeas corpus petitioner fully exhaust remedies available in state court before proceeding in federal court. The longstanding exhaustion requirement is not jurisdictional, but reflects a policy of federal-state comity designed to give the state an initial opportunity to pass upon an correct alleged violations of its prisoner's federal rights.

CRIMENAL LAW + PROCEDURE > HABEAS CORPUS > EXHAUSTION OF REMEDIES > GENERAL OVERVIEW

see 28 U.S.C.S. + 2254 [b] [i]

CRIMINAL LAW + PROCEDURE > HABEAS CORPUS > EXHAUSTION OF REMEDIES > GENERAL OVERVIEW

CRIMENAL LAW + PROCEDURE > HABEAS CORPUS > EXHAUSTION OF REMEDIES > PREREQUISITES

CRIMENAL LAW + PROCEDURE > HABEAS CORPUS > EXHAUSTION OF REMEDIES > SATISFACTION OF EXHAUSTION

To satisfy the exhaustion requirment of 28 U.S.C.S. + 2254

Nb)(1), a habeas petitioner must have fairly presented the substance of his claim to the state courts. This requirement is not satisfied if the petitioner presents new legal theories or factual claims in his federal habeas petition. The courts have consistently held that a petitioner fails to exhaust state remedies when he presents material additional evidentiary support to the federal court that was not presented to the state court.

CRIMINAL LAW + PROCEDURE > HABEAS CORPUS > EXHAUSTION OF REMEDIES > GENERAL OVERVIEW

CRIMINAL LAW + PROCEDURE > HABEAS CORPUS > EXHAUSTION OF REMEDIES > GENERAL OVERVIEW

The controlling standard of exhaustion of a federal habeas claim seems to be that the petitioner exhausts the factual basis of the claim as long as she did not either fundamentally alter the legal claim already considered by the deliberately withholding essential facts from the state courts.

CRIMINAL LAW + PROCEDURE > HABEAS CORPUS > EXHAUSTION OF REMEDIES > GENERAL OVERVIEW

A petitioner's submission of affidavits in support of his failure to investigate claim did not render the claims unexhausted for purposes of federal habeas because the "new" evidence presented no new facts but rather merely recited facts already submitted to state courts.

CRIMINAL LAW + PROCEDURE > HABEAS CORPUS > EXHAUSTION OF REMEDIES > GENERAL OVERVIEW

In general, the courts conducting a federal habeas exhaustion inquiry apply the factual similarity requirement of that inquiry

in a less stringent manner when the new facts at issue were discov-ered during federal proceedings and were not easily discoverable before then.

CRIMINAL LAW + Procedure > Habeas Corpus > Exhaustion OF REMEDIES > GENERAL OVERVIEW

Substantial new evidence rising to the level of a 180 degree turn renders a federal habeas claim unexhausted.

CRIMINAL LAW + PROCEDURE > HABEAS CORPUS > REVIEW > STANDARD OF REVIEW > GENERAL OVERVIEW

CIVIL PROCEDURE > Appeals > Standard OF REVIEW > CLEAR-LY ERRONEOUS REVIEW CIVIL PROCEDURE > APPEALS > STANDARD OF REVIEW > DE NOVO REVIEW

CRIMINAL LAW + PROCEDURE > APPEALS > STANDARD OF REVIEW > CLEARLY ERRONEOUS REVIEW > HABEAS CORPUS RELIEF

CRIMINAL LAW + PROCEDURE > HABEAS CORPUS > APPEALS > STANDARD OF REVIEW > GENERAL OVERVIEW

In a habeas corpus appeal, a court reviews findings of fact for clear error and issues of law de novo using the same standards as the district court.

CRIMINAL LAW + PROCEDURE > HABEAS CORPUS > COGNIZAB-LE ISSUES > GENERAL OVERVIEW

Courts assessing "unreasonable applications" of federal law must ask whether the state court's application of clearly established federal law was objectively unreasonable. There is a "critical distinction" between a "unreasonable application" of federal law. A federal habeas court may not issue the writ simply because

the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law, erroneously or incorrectly that application must be unreasonable. In the United States Court of Appeals for the fifth Circuit a federal habeas court reviews only a state court's decision, and not the written opinion explaining that decision.

Criminal Law + Procedure > HABEAS CORPUS > COGNIZABLE ISSUES > GENERAL OVERVIEW GOVERNMENTS > COURTS > JUDICIAL PRECEDENTS

A state court decision is contrary to the clearly established precedent of the United States Supreme Court if the state court applies a rule that contradicts the governing law set forth in our cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from our precedent.

CRIMINAL LAW + PROCEDURE > COUNSEL > EFFECTIVE ASSISTANCE > TEST

To establish a threshold deficient performance, a petitioner must first demonstrate that counsel's representation fell below an objective standard of reasonableness. Courts judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. Strickland, the United States Supreme Court specifically addressed so-called "failure to investigate" claims, explaining that strategic choice made after though investigation of law and facts relevant to plausible options are virtually unchallengeable. The court further explained, however, that strategic choices made after less than

complete investigation are reasonable precisely to the extent that reasonable professional judgment support the limitations on investigation. In short, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

CRIMINAL LAW + PROCEDURE > COUNSEL > EFFECTIVE ASSISTANCE > TRIALS

Counsel's ~~failure~~ failure to interview eyewitness to a charged crime constitutes constitutionally deficient representation.

CRIMINAL LAW + PROCEDURE > COUSEL > EFFECTIVE ASSISTANCE > TRIALS

Court have found ineffective assistance where counsel's investigation of a case consisted of reviewing the investigation fell short of what a reasonably competent attorney would have done.

CRIMINAL LAW + PROCEDURE > COUNSEL > EFFECTIVE ASSISTANCE > TRIALS

Acknowledging that a lack of credibility might support strategic decision not to call a witness to testify at trial, courts explains that a witness's character flaws cannot support a failure to investigate. Without so much as contacting a witness, much less speaking with him, counsel is ill-equipped to assess his credibility or persuasiveness as a witness.

CRIMINAL LAW + PROCEDURE > COUNSEL > EFFECTIVE ASSISTANCE > TRIALS

The "strategic decision" the state courts and the respondents all invoke to justify counsel's conduct than an accurate description of their deliberations prior to sentencing.

## CRIMINAL LAW & PROCEDURE > COUNSEL > EFFECTIVE TRIALS

The failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness. Although courts remain mindful that the range of reasonable professional judgments is wide, they recognize that ineffectiveness is generally clear in the context of a complete failure to investigate because counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when he has not yet obtained the facts on which such a decision could be made. Strickland simply does not require deference to decisions that are uninformed by an adequate investigation into the controlling facts and law.

## CRIMINAL LAW & PROCEDURE > COUNSEL > EFFECTIVE ASSISTANCE > TEST

Under Strickland's second prong, a petitioner must establish "prejudice", a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

## CRIMINAL LAW & PROCEDURE > COUNSEL > EFFECTIVE ASSISTANCE > TRIALS

## CRIMINAL LAW & PROCEDURE > COUNSEL > EFFECTIVE ASSISTANCE > GENERAL OVERVIEW

Where a court finds ineffective assistance with respect to trial counsel it does not reach the issue of appellate counsel's performance.

## CRIMINAL LAW & PROCEDURE > COUNSEL > EFFECTIVE ASSISTANCE > TRIALS

<u>CRIMINAL LAW & PROCEDURE > CRIMINAL OFFENSE > CRIMES
AGAINST PERSONS > TERRORISM > TERRORISTIC ACTS >
PENALTIES</u>

The Constitutional failing of ineffective assistance of counsel must be assessed through the prism of the Anti-Terrorism and Effective DEATH Penalty's highly deferential standards. Courts are to look only to the ultimate legal conclusion that the state court reached and not to whether the state court considered and discussed every angle of the evidence.

SUMMARY: Petitioner contends after citing that cite you can plainly understand under Federal standard with the remedy issue in fact. Meaning that the State Court has to set an ~~existendar~~ hearing to hear the evidence on such claim or claims Article 11.07 Habeas Corpus for review. Thus, if not set hearing over whats suppose to be heard here after should be reviewed by the 24TH District County, DeWitt County. With explaining what all these Exibits were with held from proceeding, and how does it fit the accusation of Murder. Witness the following.

EXIBIT "A"

AUTOPSY REPORT

BEXAR COUNTY MEDICAL EXAMINER'S OFFICE
7337 LOUIS PASTEUR
SAN ANTONIO, TEXAS 78229-4565

VINCENT J.M. DIMAIO, M.D
Chief Medical Examiner
ROBERT C. BUX, M.D
Deputy Chief Medical Examiner
RANDALL E. FROST, M.D
Assistant Medical Examiner

SUZANNE E. DANA, M.D
Medical Examiner
JAN C. GARAVAGLIA, M.D
Medical Examiner
ELIZABETH A. ROUSE, M.D
Assistant Medical Examiner

RUTH E. KOHLMEIER, M.D
Assistant Medical Examiner

NAME: Shelly, Pamela

Case No. 2001-0040

AGE: 31 RACE: W SEX: F

DATE + TIME OF AUTOPSY: 08 Jan 2001
8:30 am

## GENERAL EXAMINATION

The body is that of a well-developed, well-nourished, adult Caucasian female, 68 inches tall, weighing 166 lbs and appearing the stated age of 31 years. The deceased is nude. A black rubber band is present in the hair.

Dr. Frost is present for the autopsy.

## FINDINGS

I. Perforating contact gunshot wound to the head
A. Soot present within the entrance wound
B. Bullet entered the right frontal/temporal region, traversing the right frontal/temporal and the left parietal lobes of the cerebral cortex

C. The bullet exited the left parietal region

D. Diffuse subarachnoid hemorrhage

E. Small subdural hematoma overlying the left side of the brain

F. Multiple basilar skull fractures

G. Path of the bullet: Right to left, front to back and upward

H. No projectile recovered

## CONCLUSION

It is our opinion that Pamela Shelly, a 31 year old Caucasian female, died as a result of self-inflicted gunshot wound to the head with massive damage to the skull and underlying brain.

## MANNER OF DEATH: Suicide

SUMMARY: On this exhibit an a prime example of spoilation (of records) was kept from all proceeding during the trial phase. Thus, how is that possible when it's the original back in 2001. Witness the next exibit following.

Exibit "B"
AUTOPSY REPORT
AMENDMENT

## BEXAR COUNTY MEDICAL EXAMINER'S OFFICE
### 7337 LOUISE PASTEUR
### SAN ANTONIO, TEXAS 78229-4565

RANDALL E. FROST, M.D.
Chief Medical Examiner

ELIZABETH A. PEACOCK, M.D.
Medical Examiner

D. KIMBERLEY MOLINA, M.D.
Deputy Chief Medical Examiner

RAJESH L. KANNAN, M.D.
Medical Examiner

JENNIFER J. RULON, M.D.
Medical Examiner

WILLIAM D. McCLAIN, M.D.
Assistant Medical Examiner

Case No. 2001-0040
Name: Shelly, Pamela    AGE: 31  RACE: W  SEX: F
DATE + TIME OF AUTOPSY: 08 Jan 2001 @ 8:30 a.m.

On June 5, 2012, this office was contacted by Investigator Carl Bowen, DeWitt County Sheriff's Office, regarding this case. According to Investigator Bowen, there is now suspicion that the gunshot wound received by the decedent was not self-inflicted and may have been inflicted by another person. Investigator Bowen submitted to this office photographs and other documentation for review. After review of documents and discussions with Investigator Bowen, the manner of death is amended to "Undetermined", due to investigative uncertainties about how the wound was sustained. There remain no anatomic features of the wound that would preclude a self-inflicted wound, but a wound inflicted by another person also cannot be excluded. The cause of death remains unchanged.

MANNER OF DEATH: Undetermined.

SUMMARY: ABOUT this exibit thats from 2012 how is it possible with new found evidence to present that investigator presented to the examiners. Petitioner contends what was presented? Thus, thats why it was still undeterm-ined and furthermore the same. For the simple fact it was not from the original thus far. With most of all also was not presented during the proceeding of trial that this cause of action was taken. The question is this what new evidence of murder accusation was presented to opin the allegeded suicide and change it to a murder. Witness the following next exibit to show cause.

EXIBIT "C"            (word for word)            page 1 of 3

## TEXAS DEPARTMENT OF PUBLIC SAFETY
## TEXAS RANGER DIVISION

REPORT OF INVESTIGATION

DIV FILE NO:
RO-2001-00023

THIS REPORT IS THE PROPERTY OF TEXAS DPS-TEXAS RANGER DIVISI-ON. NEITHER IT NOR ITS CONTENTS. MAY BE DISSEMINATED OUTSIDE THE AGENCY TO WHICH LOANED.

1. QUESTIONABLE DEATH
2. DEWITT COUNTY, TX, US
3. PAMELA CURLEE SHELLY, W/F, 07/25/1969, 31 y/o/a
4. 01/07/2001        (Sunday)

REPORT BY: MARRIE GARCIA, SGT. 4362, SAN ANTONIO  FILE STATUS: CLOSED
DIVISION: RD-2001-00023                          TYPE:  CRIMINAL
RANGER: CA04362010010815012901

### SYNOPSIS:

1 01/08/2001 DRAFT REPORT

Writer was contacted by CLIFF FOULDS, DeWitt County Sheriff, for assistance with a questionable death investigation. On 01-06-2001, the deceased, PAMELA SHELLY, WF, DOB 07-25-1969, sustained a gunshot wound to the head. Due to questionable information at the time of the shooting and conflicting reports from medical authorities, writer was asked to attend the autopsy. Same was performed on 01-08-2001 by Dr. Ruth KOHLMEIER, who classified the manner of death as suicide. No further investigation will be conducted by this writer; therefore this file is closed.

### DETAILS:

1.1 Writer was contacted by Sheriff CLIFF FOULDS of DeWitt County in reference to a questionable death investigation. The deceased, Pamela SHELLY, WF, DOB 07-25-1969, sustained a gunshot wound to the head, which was presumed to be self-inflicted. FOULDS advised that his office had received questionable information at the time of the shooting and conflicting reports from medical authorities. Writer was asked to assist with the investigation by attending the autopsy, which was performed at the Bexar County Forensic Science Center in San Antonio.

1.2 Writer learned from FOULDS that SHELLY was shot with a .32 caliber pistol on the evening of 01-06-2001 at a residence on Jackson Street in DeWitt County. SHELLY was believed to have been depressed because of family problems. She was taken by EMS to the CUERO

Community Hospital and then airlifted to Brooks Army Medical Center (BAMC) in San Antonio. SHELLY died at that facility on 01-07-2001 at 9:21 p.m

1.3 Writer arrived at the Bexar County Forensic Science Center on the morning of 01-08-2001 and met with Dr. RUTH KOHLMEIER and DR. RANDALL FROST. The autopsy was performed by KOHLMEIER with FROST in attendance. The only visible injury to SHELLY was an entrance and exit wound to the head. The entry wound was located in the right temporal region and the exit wound above the left ear. The bullet traveled from right to left and slightly upward. The visible markings and damage seen at the site of the entry wound were indicative of a contact gunshot wound. These items were photographed by writer for submission to DeWitt County for their file. SHELLY's manner of death will be classified as suicide (ME # 2001-0040). This investigation is closed

OFFENSES
1.1 1. QUESTIONABLE DEATH
    2. DEWITT COUNTY, , TX, US
    3. PAMELA CURLEE SHELLY, WF, 07/25/1969, 31/y/o
    4. 01/07/2001   (sunday)

INVESTIGATORS
1.1 MARRIE GARCIA, Sergeant, Texas Rangers
    6502 S New Braunfels
    San Antonio, TX 78223
    (210) 532-2923
1.2 Cliff FOULS, Sheriff, DeWitt County Sheriff's Office
    208 Live Oak

Cuero, Tx 77954
(361) 275-5734
## CUSTODY OF EVIDENCE

1.1 Evidence    25 color photographs of SHELLY's gunshot wound
Date/Time    1/8/01 1:04:00 PM
Address
Location    Bexar County Forensic Science Center
BY:    Marrie Garcia, Sergeant, Texas Rangers, Company "D"
Recovery Value: $0.00
Note:
Transfer TO:               Transfer Date:
Sheriff Cliff Foulds            01/09/2001

### END OF REPORT

SUMMARY: Reviewing all the following from 2001 and 2012 you can plainly see the issue at hand in this matter. Mean why did they left petitioner go on that said date in 2001. The Following Exibit to witness the following.

### EXIBIT "D"

## BEXAR COUNTY
## FORENSIC SCIENCE CENTER

DATE: 01-08-2001
TIME: 1050 HRS

NAME OF DECEASED: SHELLY, PAMELA      M.E. NBR: 2001-0040
*POSITIVE I.D.                   TYPE: BX

AGE: 31   RACE: W   SEX: F                    SSN: 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
ADDRESS: 807 OLD JACKS ISLE RD   DATE OF BIRTH: 07-25-1969
CITY/ST/ZIP:                                 PHONE: 870-898-3453
OCCUPATION:                                  DRIVER'S LICENSE:


NEXT OF KIN: CARL/GENE CURLEE (PARENTS)
ADDRESS: 807 OLD JACKS ISLE RD
CITY/ST/ZIP: ASHDOWN, A.R            PHONE: 870-898-3453
NOTIFIED: 01-07-2001   BY: AT HOSPITAL   OF:
FUNERAL HOME: MADDEN IN ASHDOWN, A.R


PLACE OF DEATH: TP-BAMC
FOUND DEAD:          BY:                    OF
PRONOUNCED: 01-07-2001 @ 2121 BY: DR. JAMES GERRACCI OF BAMC
BCME NOTIFIED: 01-07-2001 @ 2152 BY: SGT. GAMBLE       OF "


APPARENT DEATH CLASSIFICATION: APPARENT UNKNOWN-GSW TO HEAD
METHOD OF IDENTIFICATION: VISUAL IDENTIFICATION, CIRUMSTANTm


DATE OF INCIDENT: 01-06-2001 DAY: SAT ---- OFFICER AT SCENE -----
TIME OF INCIDENT: EARLY AM AT WORK? N  NAME: CHIEF DEPUTY G. EDWARDS
PLACE OF INCIDENT: JACKSON STREET        BADGE: 1201
CITY/STATE: YORKTOWN, TX             OF: DEWITT
COUNTY: DEWITT (USA)


FIREARM: 32 TAURUS REV
AMMUNITION:

## CASE SUMMARY

YO/W/F. APPARENT UNKNOWN-GSW TO HEAD. DEC. WAS BROUGHT TO BAMC RLOFF FROM CUERO COMMUNITY HOSPITAL WITH A GSW TO HER HEAD. SHE WAS TREATED UNTIL EXPIRATION AT BAMC.

## MEDICAL HISTORY / PHYSICIANS

ONE KNOWN. ER PAPERWORK, HOSPITAL PAPERWORK, CLOTHING, AND ANY FIRST THAT WAS DRAWN WERE REQUESTED TO ACCOMPANY THE DEC TO THE MEO.

## SOURCE OF INFORMATION

ST. GAMBLE OF BAMC

## CIRCUMSTANCES

01-06-01 AT 1902HRS THE DEC WAS ADMITTED TO CUERO COMMUNITY HOSPITAL (361-275-6191) IN DEWITT COUNTY WITH AN APPARENT GSW TO HER HEAD. SHE WAS TRANSPORTED VIA AIRLIFE TO BAMC AND ADMITTED AT 2330HRS WITH A DX OF GSW TO HEAD AND TREATED UNTIL EXPIRATION. AT THE TIME OF THIS REPORT DETAILS PERTAINING TO THE CIRCUMSTANCES AT THE SCENE WHERE THE DEC WAS SHOT AND THE WEAPON INVOLVED ARE NOT AVAILABLE. FURTHER DETAILS ARE PENDING INVESTIGATION.

## OBSERVATIONS

BCME AT SCENE

JAMES L. AKERS
INVESTIGATOR

BODY ORDERED TO MORGUE: 01-07-2001 @ 2152 HRS  BY: JLA
BODY RECEIVED @ MORGUE: 01-08-2001 @ 0437 HRS
TRANSPORTED BY: ACMS

SUMMARY: Therefore with all this on record why was it not that the District Attorney, or Attorney for petitioner willing to present this evidence. Meaning on an investigation or allegation of murder all evidence need put in for the record. Again an act of spoilation done by the 24th Judicial District, DeWitt County (of records) violated petitioners six Amendment right. Witness the following to show cause.

Rylander v. State, 101 S.W.3d 107 (Tex. crim. App. 2003)
The court of Criminal Appeals, Johnson, J., held that court could not conclude that defendant had established that trial counsel's performance fell below an objective standard of reasonableness, where record was silent as to why counsel did or did not take certain action.

1. Criminal Law - 641.13 (1)
To show that trial counsel was ineffective, appellant must demonstrate that; (1) trial counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) a probability sufficient to undermine confidence in the outcome existed that, but for counsel's unprofessional errors, the result of the proceeding would have been different. U.S.C.A. Const. Amend. 6.

2. Criminal Law - 641.13 (1)
Judicial scrutiny of counsel's performance must be highly deferential and that reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; thus the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered second trial strategy. U.S.C.A. Const. Amend. 6.

p. 19

**3. Criminal Law – 641.13(1)**

Failure of appellant to make either of the required showings of deficient performance and sufficient prejudice defeats the claim of ineffective assistance. U.S.C.A. Const. Amend. 6.

**4. Criminal Law – 641.13(2.1, 6)**

Court could not conclude that defendant convicted of three separate felony offenses for aggravated assault had established that trial counsel's performance fell below an objective standard of reasonableness, for ineffective assistance purposes, where record was silent as to why counsel failed to present medical testimony in support of defendant's actions, failed to file pre-trial motion continuance to obtain medical testimony, and failure to investigate state's expert witness. U.S.C.A. Const. Amend. 6.

**5. Criminal Law – 1134 (3)**

An application for a writ of habeas corpus, rather than raising issue on direct appeal, is the more appropriate vehicle to raise ineffective assistance of counsel claims, since record on direct appeal will generally not be sufficient to show that counsel's representation was so deficient as to meet the first part of the Strickland standard, as the reasonableness of counsel's choices often involves facts that do not appear in the appellate record. U.S.C.A. Const. Amend. 6.

**6. Criminal Law – 641.13(1)**

Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. U.S.C.A. Const. Amend. 6.

[1-3] It pointed out that trial counsel failed to present qualified medical testimony in support of that defense, but rather sought to submit such testimony through non-medical witness, whose testimony, pursuant to the state's objective the trial court disallowed. Id. The court of appeals also cited and was troubled by "other related errors", such as failing to file a pre-trial motion for continuance to obtain or proffer qualified medical testimony, and the failure to investigate the states physicians-assistant witness. Id. at 123-24. The court also noted "trial counsel's failures during the punishment phase", such as waiving an opening statement, failing to adequately prepare certain witness's resulting in damaging and prejudicial testimony], misunderstanding the law on restitution and therefor misinforming the jury on restitution, and making prejudicial comments and references during closing arguments. Id. at 124-25

SUMMARY: Petitioner contends that if accusations of murder is in fact the allegation. Why did not the attorney put together a better defense on petitioner's behalf and submit on a motion to suppress all evidence of the accused. Therefore, if it happen in 2001 meaning the alleged murder why was petitioner release on that date in fact it happen, and why did not nor Attorney, or District Attorney want to submit any of the murder evidence during the proceedings at trial. Thus, the question is why should a T.V. show "Cold Justice" be submitted as evidence when airing on television. Meaning that's all was produce not nothing in court making petitioner forced to do an involuntary plea. Witness the next cite to have witness to the claim at hand.

<u>Wooley v. State</u>, 273 S.W.3d 260 (Tex.Crim.App.2008)

Holdings: On defendant's petition for discretionary review, the Court of Criminal Appeals, Hervey, J. held that:

[1] Factual sufficiency of evidence to support conviction was measured by the elements of offense as defined by hypothetically correct jury charge, and [2] affirmance of conviction based on theory not alleged in indictment or presented to jury violated due process.

1. <u>Criminal Law</u> — 1134.17(3)

Factual sufficiency of evidence to support conviction for murder as party would be measured by elements of offense as defined by hypothetically correct jury charge.

2. <u>Constitutional Law</u> — 4770   <u>Criminal Law</u> — 1134.60

Affirmance on direct appeal of conviction for murder as party, based on appellate court's determination that evidence supported theory that defendant.

3. <u>Constitutional Law</u> — 4770

Due process prevents an appellate court from affirming a conviction based upon legal and factual grounds that were not submitted to the jury. U.S.C.A. Const. Amend. 14.

4. <u>Criminal Law</u> — 1134.60

Appellate courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory were presented to the jury.

<u>II. Federal Due-Process Implications of affirming</u> Appellant's Conviction Under Theory That Appellant Aided Another In Committing The Offense: [2,3] Malik also recognizes

the rule, relied upon by appellant in his second ground for review, that "due process prevents an appellate court from affirming a conviction based upon legal and factual grounds that were not submitted to the jury." See Malik, 953 S.W. 2d. at 238 n.3; Dunn v. United States, 442 U.S. 100, 105-07, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979) ("To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process."). [4] In this case, we believe that McCormick, Dunn and Cole require a decision that appellant's due-process rights were violated when the court of appeals affirmed his conviction under the unsubmitted theory that he aided "another" to murder the complainant. See McCormick 500 U.S. at 270 n 8, 111 S.Ct. 1807 ("This court has never held that the right to a jury trial satisfied when an appellate court retries a case on appeal under different instructions and a different theory than was ever presented to the jury. Appellate courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory were presented to the jury"). See Santellan, 271 F.3d at 191-97. The defendant's conviction in Santellan was, therefore, ultimately upon hold on a theory "as it was tried and as the issues were determined in the trial court." Compare Cole, 333 U.S. at 201, 68 S.Ct. 514 (remanding case to state court to have validity of defendants convictions "appraised on consideration of the case as it was tried and as the issues were determined in the trial court"). See Dunn, 442 U.S. at 107, 99 S.Ct. 2190 ("it violates due process to send an accused to prison on "a charge on which he was never tried"). In add-ition, Chapman was decided before McCormick and Dunn, neither

of which mentioned that the error involved in those case would be subject to the harmless-error rule of chapman. On the contrary, Dunn stated that "appellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial". Dunn, 442 U.S. at 107, 99 S.Ct. 2190. This does not support a decision that the error involved in Dunn and in this case is subjected to a harmless-error analysis under Chapman.

SUMMARY: Petitioner contends with the Exibits in this memorandom and the record shows, all of them present. Why is it that it was a theroy on question about murder when it was ruled a suicid in 2000. Therefore after submitting what was ever submitted by investigator Bowen, Sheriff DeWitt County the results were the same. Witness the following cite to show cause.

SCOTT v. State, 946 S.W.2d 166 (Tex. App. —Austin 1997)
Defendant was convicted in the District Court, Travis County, Tom Blackwell, J., of aggravated robbery with deadly weapon, and he appealed. The court of Appeals, Carl E.F. Dally, J. (Retired), held that evidence was insufficient to support necessary element of offense of which defendant was convicted.

1. Criminal Law —1134 (2)
Sufficiency of evidence to convict must be measured against jury charge.

2. Criminal Law — 59 (1)
In determining whether accused is party to offense and bears criminal

P.24

responsibility, court may look to events before, during, and after commission of offense.

3. Criminal Law - 552

Participation in enterprise may be inferred from circumstances and need not be shown by direct evidence; circumstantial evidence may be sufficient to show that one is a party to offense.

4. Criminal Law - 552 (2)

If evidence show mere presence of accused at scene of offense, or even his flight from scene, with more, then it is insufficient to sustain conviction as party to offense.

5. Criminal Law - 59 (1)

Standing alone, proof that accused assisted primary actor in making his getaway is insufficient to sustain conviction as party to offense, even though accused's conduct may constitute independent offense of hindering apprehension or prosecution. V.T.C.A., Penal Code 38.05

6. Criminal Law - 742 (1)

Jurors are exclusive judges of facts, credibility of witnesses, and weight to be accorded their testimony.

7. Criminal Law - 555

Jury is free to reject any or all evidence presented at trial.

8. Criminal Law - 549

Although jury may accept or reject any or all evidence adduced, it may not reach verdict based on speculation.

9. Criminal Law - 1159.2 (7)

Jury's verdict must be supported by evidence proving beyond reasonable doubt every element of offense of which defendant is convicted.

P.25.

## 10. Robbery - 24.20

Evidence was not sufficient for trier of fact to find that, before codefendant committed Robbery, defendant entered into conspiracy and agreed to become party to aid in robbery by driving getaway car and therefore, evidence, direct and circumstantial was insufficient to support necessary element of offense of aggravated robbery with deadly weapon; jury disbelieved defendants-confession. V.T.C.A., Penal Code t 29.03

[1] Appellant and three codefendants were charged with the offense of attempted capital murder and aggravated robbery. All were together before the same jury. The charge of attempted capital murder was abandoned and the jury was charged only on the offense of aggravated robbery. The jury acquitted Christopher Whitman and convicted Cornell Loving, Andre Webb and appellant of the offense of aggravated robbery. The evidence shows appellant drove the car in which the defendants left the scene of crime. The state acknowledge that appellant could be convicted of the offense of aggravated Robbery only as a party. The trial court instructed the jury on the law of parties. Then, with the state's acquiescence, the court instruction the jury that before it could find the appellant guilty it must find beyond reasonable doubt that appellant entered into an agreement and a conspiracy with the codefendants to commit the offense of robbery, that one or more of the codefendants committed the robbery, appellant pursuant to the prior agreement "aided as a party by driving the getaway car,... and that such offense was committed in the furtherance of the unlawful purpose to commit robbery". [2,7] Participation in an enterprise may be inferred from circumstances and need not be shown by direct evidence, Id. Circumstantial evidence may be sufficient to show that

P.26

one is a party to offense. Id.; Ex parte Prior, 540 S.W. 2d 723, 728 (Tex. Crim. App. 1976). If the evidence shows the mere presence of an accused at the scene of an offense, or even his flight from the scene, without more, then it is insufficient to sustain a conviction as a party to the offense. Valdez v. State, 623 S.W. 2d 317, 321 (Tex. Crim. App. 1979). Standing alone, proof that an accused assisted the primary actor in making his getaway is likewise insufficient -even though the accused's conduct may constitute the independent offense of hindering apprehension or prosecution. See Tex. Penal Code Ann. ¶ 88.05 (West 1994); Guillory v. State, 877 S.W. 2d 71, 74 (Tex. App. -Houston [1st Dist.] 1994, pet. ref'd). The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be accorded their testimony. Esquivel v. State, 506 S.W. 2d 613, 615 (Tex. Crim. App. 1974); Davis v. State, 831 S.W. 2d 426, 434 (Tex. App. - Austin 1992, pet. ref'd). The jury is free to reject any or all evidence presented at trial. Id.; see Rousseau v. State, 785 S.W. 2d 387, 391 (Tex. Crim. App. 1990). [8,9] The State has not pointed out, and we cannot find, any evidence in the record other than Loving's and appellant's statements tending to support the jury's verdict finding the appellant guilty as a party to the offense of aggravated robbery. Although a jury may accept or reject any or all evidence adduced, a jury may not reach a verdict based on speculation. Johnson v. State, 673 S.W. 2d 190, 196 (Tex. Crim. App. 1984) A jury's verdict must be supported by evidence proving beyond a reasonable doubt every element of the offense of which a defendant is convicted. [10] We conclude that evidence, considered in the light most favorable to the jury's verdict, is not sufficient for a rational trier of offense of robbery, appellant entered into a conspiracy and agreed to become a party to aid in the robbery by driving the getaway car. Therefore, the evidence, direct and circumsta

A27

-ntial, is insufficient to support a necessary element of the offense of which appellant was convicted. We reverse the judgment of conviction and render a judgment of acquittal.

SUMMARY: Petitioner contends with all this in this memorandum of Law with Exibits. If there was new evidence of alleged accusation of murder of another? Why is it that petitioner is the only one charge? Furthermore if it is, so how could it be on the night of the alleged accusation which was ruled a suicide petitioner was set free. Therefore the court should hold an evidentary hearing to show cause of all evidence pertaining to murder as an accusation accused of petitioner. When the fact remains that the District Attorney, Attorney and judge committed a spoilation (of records) from the proceeding at trial. Petitioner defines suicide to show cause in arguement.

SUICIDE the voluntary and intentional killing of one's self; suicide was a felony at common law.

## CONCLUSION

Which means you can not make a suicide a murder no way possible with out proof beyond an reasonable Doupt. The 24th Judical District has committed a fundulent practice of withhold-ing the original records of suicide to fine an involuntary plea on petitioner. All behind an T.V. show "Cold Justice" embancey act a hearing should be set and judgment for acquittal rendered on reversal.

# PRAYER FOR RELIEF

WHEREFORE, PREMISES, Petitioner prays that the court reverse judgment and enter judgment of an acquittal.

Petitioner pro se

SAN ANTONIO PUBLIC TX 7824
MON 15 DEC 2014 PM

FOREVER USA   FOREVER USA   FOREVER USA   FOREVER USA   FOREVER USA

LEY

The
Laws
Belong
together

This is
The 2nd one
and they
all came
at the same
how How
they can
Keep and go
throw out
mai) Please
Tell nice how
Keep Braking

ROMAN GARZA EAST
4364 HWY 202
BEEVILLE, TEXAS 78102

DEBRA KEGLEY
735 JACKSON RD.
WESTOFF, TEXAS 77994

SAN ANTONIO
MON 15 DEC